FILED
2011 Mar-08 AM 09:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | |
|---|---|
| **SYLVIA M. ARD, CHAROLATE B. DOBBINS, LINDA G. ENGLAND, CATHY D. SHIREY, and CAROLYNN J. SIMS,** | ) ) ) ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) **Case No.:  4:10-CV-489-VEH** |
| | ) |
| **PARAGON DECORS, INC.,** | ) |
| | ) |
| **Defendant.** | ) |

---

## MEMORANDUM OPINION AND ORDER

### I.     Introduction and Procedural History

Plaintiffs initiated this job discrimination case against Defendant Paragon Decors, Inc. ("Paragon") on March 3, 2010.  (Doc. 1). Currently pending before the court is Paragon's Motion to Sever (Doc. 33) (the "Motion") filed on February 10, 2011.  In its Motion, Paragon seeks to have the court "sever Plaintiffs' claims so that Dobbins and England must each proceed separately, and Sims and Ard—who worked in the same department and were evaluated and ranked by the same immediate supervisor—proceed together in a third cause of action." (*Id.* at 1-2).  On February 10, 2011, Paragon filed a memorandum as well as an evidentiary submission in

support of its Motion.  (Docs. 34, 35).

Plaintiffs filed their response and evidentiary submission in opposition to the

Motion on February 24, 2011.  (Docs. 37, 38).  On March 4, 2011, Paragon followed

with its reply (Doc. 39), and the Motion is now under submission.  For the reasons

explained below, the Motion is **DENIED**.

## II.     Standard

Paragon's Motion is brought pursuant to Rule 21 of the Federal Rules of Civil

Procedure.  (Doc. 33 at 1).  Rule 21 provides:

> Misjoinder of parties is not a ground for dismissing an action.  On
> motion or on its own, the court may at any time, on just terms, add or
> drop a party.  <u>The court may also sever any claim against a party</u>.

Fed. R. Civ. P. 21 (emphasis added).

Severance under Rule 21 is directly related to permissive joinder of parties

under Rule 20.  As Rule 20 pertains to joining plaintiffs in particular:

> **(1)** *Plaintiffs.*  Persons may join in one action as plaintiffs if:
>
>> **(A)** they assert any right to relief jointly, severally, or in the
>> alternative with respect to or arising out of <u>the same
>> transaction, occurrence, or series of transactions or
>> occurrences</u>; and
>>
>> **(B)** <u>any question of law or fact common</u> to all plaintiffs
>> will arise in the action.

Fed. R. Civ. P. 20(a)(1) (emphasis added).  Rule 20 further states with respect to all

2

parties that:

> **(b) Protective Measures.**  The court may issue orders--including an order for separate trials--<u>to protect a party against embarrassment, delay, expense, or other prejudice</u> that arises from including a person against whom the party asserts no claim and who asserts no claim against the party.

Fed. R. Civ. P. 20(b) (emphasis added).

A district court's decision to allow joinder or order severance is a discretionary one.  *See, e.g., Nor-Tex Agencies, Inc. v. Jones*, 482 F.2d 1093, 1100 (5th Cir. 1973) ("The district judge acted <u>within his discretion</u> in allowing the joinder under Rule 20(a), as well as denying the motion for severance under Rule 20(b).") (emphasis added) (citations omitted);[1] *see also Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1322 (11th Cir. 2000) ("We review a district court's joinder of Plaintiffs' claims and denial of severance for abuse of discretion.") (citing *Nor-Tex Agencies*) (footnote omitted), *overruled on other grounds by Manders v. Lee*, 338 F.3d 1304, 1328 (11th Cir. 2003).

## III.  Ruling

Paragon contends that "Plaintiffs' claims [should be] severed based on their departments, which were the decisional units in the reduction in force which is the

---

[1]  In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

critical event in Plaintiffs' claims."   (Doc. 34 at 1).   Plaintiffs respond that

"Defendant's motion is due to be denied because the cited evidence does not

demonstrate that the individual team leaders were the final decision-makers, or that

they were solely responsible for the subjective component of the reduction in force,

because the witnesses and evidence for each of their claims are essentially the same,

and because the prejudice to Plaintiffs from being forced to take part in three trials,

rather than one, the unnecessary use of judicial resources, and the risk of inconsistent

findings outweigh any risk of confusion of the issues."   (Doc. 37 at 1-2).

Based upon controlling law applicable within the Eleventh Circuit:

A party seeking joinder of claimants under Rule 20 must establish two
prerequisites: 1) a right to relief arising out of the same transaction or
occurrence, or series of transactions or occurrences, and 2) some
question of law or fact common to all persons seeking to be joined. *See*
Fed. R. Civ. P. 20(a).   Plainly, the central purpose of Rule 20 is to
promote trial convenience and expedite the resolution of disputes,
thereby eliminating unnecessary lawsuits.   *See Mosley v. General
Motors Corp*., 497 F.2d 1330, 1332 (8th Cir. 1974).   The Federal Rules,
however, also recognize countervailing considerations to judicial
economy.   Rule 42(b), for example, provides for separate trials where
the efficiency of a consolidated trial is outweighed by its potential
prejudice to the litigants.   *See* Fed. R. Civ. P. 42(b); *Grayson*, 79 F.3d
at 1097. The Supreme Court has instructed the lower courts to employ
a liberal approach to permissive joinder of claims and parties in the
interest of judicial economy: "Under the Rules, the impulse is towards
entertaining the broadest possible scope of action consistent with
fairness to the parties; joinder of claims, parties and remedies is strongly
encouraged." *United Mine Workers v. Gibbs*, 383 U.S. 715, 724, 86 S.
Ct. 1130, 1137, 16 L. Ed. 2d 218 (1966).

4

*Alexander*, 207 F.3d at 1322-23 (emphasis added).

Regarding the first requirement, the *Alexander* court explained:

In determining what constitutes a transaction or occurrence for the purposes of Rule 20(a), courts have looked for meaning to Fed. R. Civ. P. 13(a) governing compulsory counterclaims. *See Mosley*, 497 F.2d at 1333. For the purposes of Rule 13(a), " '[t]ransaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *Moore v. New York Cotton Exchange*, 270 U.S. 593, 610, 46 S. Ct. 367, 371, 70 L. Ed. 750 (1926) (interpreting the compulsory counterclaim provision of former Equity Rule 30). Accordingly, "<u>all 'logically related' events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence.</u>" *Mosley*, 497 F.2d at 1333. Several courts have concluded that allegations of a "pattern or practice" of discrimination may describe such logically related events and satisfy the same transaction requirement. In *Mosley*, perhaps the leading case on the joinder of Title VII plaintiffs under Rule 20, *see* 4 Lex K. Larson, *Employment Discrimination*, § 78.05, at 28-29 (2d ed.1994), ten black plaintiffs alleged that General Motors had a general policy of discrimination against black employees. The trial court had ordered the severance of the claims, concluding that the allegations presented a variety of issues and had little relationship to one another. Mosley, 497 F.2d at 1332. The Eighth Circuit reversed the trial court's order to sever plaintiffs' claims, concluding that, based on its reading of Rule 20, the General Motors policy "purportedly designed to discriminate against blacks in employment ... [arose] out of the same series of transactions and occurrences." *Id.* at 1334. The court held that "[s]ince a 'state-wide system designed to enforce the registration laws in a way that would inevitably deprive colored people of the right to vote' was determined to arise out of the same series of transactions or occurrences, we conclude that a company-wide policy purportedly designed to discriminate against blacks in employment ... arises out of the same series of transactions or occurrences" *Id.* at 1333-34 (quoting *United States v. Mississippi*, 380 U.S. 128, 142, 85 S. Ct. 808, 815-16, 13 L. Ed.

2d 717 (1965)).  *See also Blesedell v. Mobil Oil Co.*, 708 F.Supp. 1408, 1422 (S.D.N.Y.1989) ( "A company-wide policy purportedly designed to discriminate against females in employment arises out of the same series of transactions or occurrences."); *King v. Pepsi Cola Metro. Bottling Co.*, 86 F.R.D. 4, 6 (E.D. Pa.1979) (noting that allegations of a "pervasive policy of discrimination" by the employer bring the "complaints of individual Plaintiffs under the rubric of the 'same series of transactions' "); *Vulcan Soc'y of Westchester Cty. v. City of White Plains Fire Department*, 82 F.R.D. 379, 387 (S.D.N.Y.1979) (stating that transaction requirement met where Plaintiffs and would-be Plaintiffs claimed discriminatory policies and practices which included a series of exams allegedly used to discriminate against blacks).

*Alexander*, 207 F.3d at 1323-24 (emphasis added).

As the *Alexander* court clarified the scope of the second joinder requirement:

> The second prong of Rule 20 does not require that *all* questions of law and fact raised by the dispute be common, but only that some question of law or fact be common to all parties.  *See Mosley*, 497 F.2d at 1334. Several courts have found that the question of the discriminatory character of Defendants' conduct can satisfy the commonality requirement of Rule 20.  *See Mosley*, 497 F.2d at 1334 (finding that whether the threat of a racially discriminatory policy hangs over a racial class is a question of fact common to all the members of the class); *Blesedell*, 708 F. Supp. at 1422 (noting that "[i]n employment discrimination cases under Title VII, courts have found that the discriminatory character of a defendant's conduct is common to each plaintiff's recovery"); *cf. Grayson*, 79 F.3d at 1095-96 (suggesting that "a unified policy, plan, or scheme of discrimination" can satisfy Rule 20's commonality requirement).

> On the other hand, the prejudicial effects of other witnesses' alleged discriminatory experiences may outweigh their probative value where, for example, the alleged discrimination occurs during different time periods, *see, e.g., Annis v. County of Westchester*, 136 F.3d 239, 247 (2d Cir. 1998); *Williams v. The Nashville Network*, 132 F.3d 1123,

1130 (6th Cir.1997), <u>different supervisors make the challenged</u> <u>decisions</u>, *see, e.g., Annis*, 136 F.3d at 246-47; *Williams*, 132 F.3d at 1130; *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1221 (5th Cir. 1995), or the alleged discrimination happens at geographically removed places, *see, e.g., Williams*, 132 F.3d at 1130; *Mooney*, 54 F.3d at 1221. None of these concerns is presented here.

*Alexander*, 207 F.3d at 1324 (emphasis by underlining added).

In upholding the district court's decision permitting joinder under Rule 20, the

*Alexander* court summarized:

In this case, the district court did not abuse its discretion in finding that the Plaintiffs satisfied both requirements for joinder. As for the first requirement, all of the Plaintiffs' claims stem from the same core allegation that they were subject to a systemic pattern or practice of race-based discrimination against white law enforcement officers by Sheriff Barrett in her first year in office. <u>Plaintiffs all seek relief based</u> <u>on the same series of discriminatory transactions by the same</u> <u>decision-maker in the same department during the same short time</u> <u>frame</u>. <u>As for the second requirement, the discriminatory character of</u> <u>Defendants' conduct is plainly common to each plaintiff's recovery</u>. The fact that the Plaintiffs suffered different effects-in this case, discrimination in promotions, transfers, assignments, or discipline-from the alleged policy of discrimination did not preclude the trial court from finding a common question of law and fact. *See Mosley*, 497 F.2d at 1334; *Blesedell*, 708 F. Supp. at 1422.

*Alexander*, 207 F.3d at 1324 (emphasis added).

Against this backdrop and in light of the record evidence presented with

respect to the Motion, the court concludes, akin to *Alexander*, that both joinder

prongs are sufficiently satisfied.  In particular, all four plaintiffs were let go during

the same company-wide layoff, at the same geographical location, and as part of the same decision-making process, which simultaneously ended for each plaintiff as the result of the actions by two identical recommenders and one same final decisionmaker. *See Duke v. Uniroyal Inc.,* 928 F.2d 1413 (4th Cir. 1991) ("Plaintiffs' claims arise out of the same transaction, <u>a single reduction in force, raising common questions of law and fact</u>.") (emphasis added). Likewise, each plaintiff asserts that her gender and/or her forty-something age played a role in the decision-making process and seeks comparable relief due to the allegedly discriminatory practices engaged in by Paragon. (*See generally* Doc. 19 (Plaintiffs' amended complaint)).

More specifically, around the end of May or the beginning of June 2008, Paragon's President, Lendell Glassco ("Mr. Glassco"), was the person who decided that the company needed to lay off part of its workforce. (Doc. 38-2 at 48). Also, while Mr. Glassco asserts that he was not responsible for deciding who would be let go, his deposition testimony establishes the following chain of command: (1) the team leaders provided evaluative input regarding who would be selected to be laid off; (2) Pargaon's Plant Manager, Randy Gable ("Mr. Gable"), and Paragon's Vice President, Ralph King ("Mr. King"), were the persons responsible for making the final recommendations about which employees should be included in the reduction in force; and (3) Mr. Glassco, was the person who ultimately accepted or ratified

8

those recommendations.  (*See* Doc. 38-2 at 48-49 ("The particulars of the people were done by the team leaders, then overseen by Mr. Gable and Mr. King, and they presented me with the names of the particular individuals based on their work."); *id.* at 49 ("Q.  And so you ratified their recommendations?  A.  Yes sir.")).  There is evidence that Mr. Gable and Mr. King added factors into the reduction-in-force assessment that were subjective and not considered by the team leaders.  (*See, e.g.*, Doc. 38-2 at 96 ("Q.  But without strength tests and data of past tests, it would be subjective by Gable and King, right?  A.  That is correct, yes.")).

Mr. Glassco, Mr. Gable, and Mr. King, were the three management personnel who met with the employees to let them know about the layoff decisions with Mr. Glassco serving as the designated spokesman.  *Id.* at 49.  As Plaintiff Sylvia Ard ("Ms. Ard") testified about her notes made soon after the meeting:  "It said – I wrote it in there.  They could not go by seniority because it would wipe out the saw and frame departments.  That was the men."  (Doc. 35-1 at 159 (emphasis added); *see also id.* at 161 ("[W]hat I recalled was he [*i.e.*, Mr. Glassco] said they were not laying off any men.") (emphasis added)).  Similar proof from other witnesses exists in the record.  (*See, e.g.*, Doc. 38-1 at 134-35 ("[H]e was going by job performance, strength, absentees, write-ups, and age, and that he couldn't -- he . . . . wouldn't go by seniority and that he couldn't lay any off, it would wipe out the Frame Department and the Nail

Department and the Glass Department, all those, they were men's jobs.")).

Therefore, the logically-related pattern of events stemming from the same company-wide reduction-in-force decision-making process satisfies Rule 20's first prong, and whether those decisions affecting Plaintiffs were impermissible tainted by gender and/or age meets the second.  To the extent that the team leaders of the various departments played a significant role in the decision-making process, this fact alone does not create a situation in which "the prejudicial effects of other witnesses' alleged discriminatory experiences may outweigh their probative value[.]" *Alexander*, 207 F.3d at 1324; *see also Duke*, 928 F.2d at 1421 ("While there was a broad variation of circumstances relating to the merits of the individual performances of each of the plaintiffs, <u>this evidence could be easily distinguished by the jury</u>.") (emphasis added).

Paragon's cited authorities do not suggest that a different result is warranted. Preliminarily, none of the decisions is binding on this court.  District court decisions, even from within the Eleventh Circuit, are not controlling precedent, but rather are persuasive authority for this court to consider.  *See Fishman & Tobin, Inc. v. Tropical Shipping & Constr. Co.*, 240 F.3d 956, 965 (11th Cir. 2001) ("As a result, the district court cannot be said to be bound by a decision of one of its brother or sister judges."). In contrast, this court is bound to follow the guidance set forth in *Gibbs* and *Alexander* on the issue of joinder.  *Fishman*, 240 F.3d at 965 n.14 ("In the case of the

Southern District of Florida [or the Northern District of Alabama] Court, <u>the only</u>
<u>courts it must be obedient to are this Circuit and the Supreme Court of the United</u>
<u>States</u>.") (emphasis added).

Also, all of the cases arise <u>outside of the context of a single location, company-</u>
<u>wide reduction in force, with the president of the company operating as the final</u>
<u>decisionmaker</u>, and as a result, the court finds them to be unpersuasive as to the
particular severance issue presented here. *See, e.g., Henderson v. AT & T Corp.*, 918
F.Supp. 1059, 1061 (S.D. Tex. 1996) ("The Plaintiffs are residents of five different
cities and four different states who worked in four separate AT & T offices located
in three states."); *Grayson v. K-Mart Corp.*, 849 F.Supp. 785, 786 (N.D. Ga. 1994)
("The eleven plaintiffs in this case are former store managers of defendant K Mart
Corporation ("K Mart") who are, or were, employed in defendant's stores located in
Alabama, Florida, Georgia, and North Carolina."); *Otis Clapp & Son, Inc. v. Filmore*
*Vitamin Co.*, 754 F.2d 738, 740 (7th Cir. 1985) (unfair trade competition case); *U.S.*
*v. O'Neil*, 709 F.2d 361, 364 (5th Cir. 1983) (government seeking to recover
overpayments under "the Upland Cotton Price Support Program, 7 U.S.C. §
1444(e)"); *Thompson v. Ingalls Shipbuilding*, No. 1:01CV111-LG-RHW, 2006 U.S.
Dist. LEXIS 58117, at *7 (S.D. Miss. Aug. 17, 2009) ("The Plaintiffs in this lawsuit
work in more than 20 different departments, sought promotions or challenge

promotion decisions in different physical locations in the shipyard, and challenge

promotion decisions made by numerous different decision-makers."); *Luster v.

*Lockheed Martin Corp.*, No. 1:09-CV-01946-JOF-ECS, 2009 U.S. Dist. LEXIS

112016, at *3 (N.D. Ga. Dec. 1, 2009) (disciplinary firings in which "[l]itigation of

Defendant's actions, as it might affect each Plaintiff here, would inevitably focus in

detail on the separate work histories, alleged violations of Defendant's email policy,

and the circumstances surrounding the firing of each individual Plaintiff"); *DirecTV,*

*Inc. v. Leto*, 467 F.3d 842, 843 (3d Cir. 2006) (case arising out of "persons pirating

(that is, intercepting without payment) its television transmissions"); *Lee v. Dell*

*Prods.*, L.P., No. 3:06CV0001, 2006 U.S. Dist. LEXIS 75573, at *1 (M.D. Tenn. Oct.

16, 2006) ("Plaintiffs in this case, Byron Lee, Paul Weir, Brenda Starks, Carol

Matthews, Tresa Sanders, Chris Black, Genola Sanders, Sharon Johnson, and Jose

Cole each African-American, and Mohammed Qarsem, a Palestinian-American, are

current and former employees of Dell, who are or were employed at either Dell's

Nashville or Lebanon, Tennessee facilities.").

     Further, the one case that does arise in the context of a reduction in force,

*Bloomquist v. ZLB Behring, LLC*, No. 06 C 6738, 2007 U.S. Dist. LEXIS 73137

(N.D. Ill. Sept. 28, 2007), is still dissimilar because there the company's president did

not serve as the final decisionmaker; rather the case involved multiple transactions

as well as final decisionmakers.  As the district court explained, the plaintiffs' section 510 ERISA claims and ADEA claims should be severed because neither category "satisf[ied] the same transaction requirement of Rule 20(a)."  *Bloomquist*, 2007 U.S. Dist. LEXIS 73137, at *7.  More specifically, regarding the section 510 ERISA claims, the court reasoned that "the contested terminations arise from at least two separate transactions -- termination of union employees and termination of non-union employees -- and may have arisen from as many as twenty separate transactions -- termination of union employees and termination of non-union employees by nineteen different managers."  *Bloomquist*, 2007 U.S. Dist. LEXIS 73137, at *6-7.

As for the ADEA claims, the court concluded that the single transaction element was not satisfied because the "plaintiffs contend that defendant made individual hiring decisions that had a discriminatory impact on its workforce, not that it applied a single discriminatory hiring policy to all victims of the RIF."  *Bloomquist*, 2007 U.S. Dist. LEXIS 73137, at *8 (emphasis added).  Here, Plaintiffs are contesting a single reduction-in-force policy implemented by Paragon at the highest managerial level, and thus, *Bloomquist* is significantly distinguishable.  Alternatively, the court rejects *Bloomquist* to the extent that it is arguably applicable in this instance, and instead adheres to the joinder analysis of the Eleventh Circuit in *Alexander* and the Fourth Circuit in *Duke*.

13

In sum, as the movant, Paragon has failed to demonstrate that the level of any <u>potential</u> prejudice caused to it by joinder, outweighs the significant judicial efficiencies to be gained by continuing to proceed as one lawsuit, especially in light of the Supreme Court's undeniable words in *Gibbs* that <u>strongly encourage</u> a broad application of joinder principles whenever fairness for the parties can be maintained, such as is the situation here.  Therefore, for all these reasons, Paragon's Motion is **DENIED**.

**DONE** and **ORDERED** this the 7th day of March, 2011.

VIRGINIA EMERSON HOPKINS
United States District Judge

14